**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JAMES POLLITZ,

       Plaintiff,

v.                                                                                  Case No. 6:15-cv-450-Orl-37KRS

HALIFAX HEALTH; and HALIFAX STAFFING, INC.,

       Defendants.

## ORDER

This matter is before the Court on the following:

1. Defendants Tom Garthwaite's and Kimberly Fulcher's Dispositive Motion to Dismiss Complaint and Incorporated Memorandum of Law (Doc. 30), filed April 13, 2015;

2. Defendants' Motion to Dismiss Complaint (Doc. 31), filed April 14, 2015;

3. Defendants' Motion for Involuntary Dismissal of Complaint as a Sham Pleading (Doc. 32), filed April 14, 2015;

4. Notice of Voluntary Dismissal Without Prejudice as to Tom Garthwaite and Kimberly Fulcher Only (Doc. 33), filed April 21, 2015;

5. Response to Hospital Defendants' Motion to Dismiss (Doc. 34), filed April 25, 2015;

6. Response to Hospital Defendants' Motion for Involuntary Dismissal of Complaint as a Sham Pleading (Doc. 35), filed April 25, 2015;

7. Defendant Halifax Health and Halifax Staffing's Reply on its Motion to Dismiss (Doc. 39), filed May 7, 2015;

8. Order to Show Cause (Doc. 52), filed July 24, 2015; and

9. Plaintiff's Response to Order to Show Cause (Doc. 55), filed August 7, 2015.

## BACKGROUND[1]

This action arises out of the Defendants' alleged refusal to allow Plaintiff to attend or speak at a public Board meeting in violation of his constitutional rights. (Doc. 1, ¶ 6).

Beginning in 1999, Plaintiff, employed by Defendant Halifax Staffing, Inc., worked as an Oncology pharmacist at Defendant Halifax Health's hospital. (*Id.* ¶¶ 13–14.) Upon discovering defects in the oncology software and procedures, Plaintiff acted as a whistleblower, which was "met with great opposition and outcry at Halifax Health and Halifax Staffing." (*Id.* ¶¶ 15–17.) As a result of his whistleblowing, Plaintiff was suspended for three days in December of 2013 and he was formally terminated from employment on January 3, 2015. (*Id.* ¶¶ 19–20, 22.) Although he was advised not to visit the Halifax Health premises during his suspension, "at no time was [he] advised that he should not come onto the Hospital premises following his suspension or termination." (*Id.* ¶¶ 23–24.)

In February of 2014, Halifax Staffing offered to buy out Plaintiff's pension plan. (*Id.* ¶¶ 25–26.) Plaintiff knew that, at that time, Halifax Health was defending against allegations of fraudulent billing practices and that a jury trial was set to begin on March 3, 2014 (the "Federal Case"). (*Id.* ¶ 27.) Plaintiff decided to attend a Halifax Health Board of Commissioners meeting on March 3, 2014, because he "expected the Board to address the pending Federal Case and the [e]ffect those proceedings may have [had] on his

---

[1] The facts set forth in this Order are taken from the Plaintiff's Complaint and are construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

2

pension." (*Id.* ¶¶ 32, 34, 36.)  Because "[the Halifax Health] Hospital and Halifax Staffing are agencies of the government," the Board meetings are open to the public and the public is allowed to comment and ask questions of the Board. (*Id.* ¶¶ 29–31.)

Plaintiff alleges that the events on March 3, 2014, unfolded as follows:

(1)   Plaintiff arrived at the meeting, nodded to Mr. Garthwaite—the man who made the decision to terminate him—and sat in the audience (*id.* ¶¶ 21, 36–37);

(2)   For approximately 15 minutes, Plaintiff "remained seating observing the meeting" without causing any disturbance (*id.* ¶ 41; *see also id.* ¶¶ 39–40);

(3)   Upon being notified that Plaintiff was at the meeting, Mr. Garthwaite asked Plaintiff to step outside (*id.* ¶¶ 42–43);

(4)   The Board of Commissioners saw Mr. Garthwaite ask Plaintiff to step outside the meeting but "did nothing to interfere with [his] actions" (*id.* ¶ 44);

(5)   Once Plaintiff got into the hallway outside the meeting, he was "immediately surrounded" by a security officer, Ms. Fulcher—the Hospitals Vice President of Operations—and the Hospital's Chief Security Officer ("CSO") (*id.* ¶ 47);

(6)   When asked why he was on the premises, Plaintiff responded that he was there to attend the meeting to hear about the pension plan and he "restated his position that no one had told him that he could not enter the Hospital" (*id.* ¶¶ 48–51);

(7)   Mr. Garthwaite and Ms. Fulcher instructed the CSO to escort Plaintiff out of the building (*id.* ¶ 53) even though they did not claim he was disrupting the meeting, causing a disturbance, or threatening anyone (*id.* ¶¶ 56–58);

(8)   After being escorted into the parking lot, the CSO instructed another officer to issue Plaintiff a trespass notice (*id.* ¶¶ 59–65).

Plaintiff alleges that he has a "well-established right under Florida law and the First Amendment to the United States Constitution"—which Mr. Garthwaite and Ms. Fulcher

3

knew of—to: (1) "attend public meetings of the government and its agencies"; (2) "question public officials during the time allotted for such questions at public hearings"; and (3) "seek redress of his grievances without the threat of retaliation for the exercise of that right." (*Id.* ¶¶ 67–70.)

Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 claiming that Defendants' action "in removing [him] from the March 3, 2014 meeting and barring him from attending any future meetings" violated his First Amendment rights and the equivalent protections of the Florida Constitution.[2] (*Id.* ¶¶ 1, 64–69, 132–34.) Plaintiff seeks declaratory relief, injunctive relief, and damages. (*Id.* ¶¶ 101, 111.) Defendants move to dismiss Plaintiff's Complaint on multiple grounds[3] (Docs. 31, 32), all of which Plaintiff opposes (Docs. 34, 35). The matter is now ripe for adjudication.

## DISCUSSION

The Court will address each of Defendants' arguments in turn.

---

[2] To be clear, Plaintiff does not bring a retaliation claim in this action. Despite the factual allegations relating to a potential retaliation claim (Doc. 1, ¶¶ 98, 106 ("The actions of the Defendants . . . were taken . . . as retaliation for his former actions as a whistleblower.")), his causes of action are premised on the allegations that Defendants violated his First Amendment rights to freedom of speech and of petition when they prohibited him from attending the meeting, and he seeks a declaration in accordance with those allegations. (*See id.* ¶ 101 ("Plaintiff pray[s] . . . [t]hat the Court declare that the Defendants' actions in preventing Plaintiff from speaking at a public hearing . . . and from denying Plaintiff an opportunity to speak at any other time in the future, violates Plaintiff's First Amendment right of free expression."); ¶ 111 ("Plaintiff pray[s] . . . [t]hat the Court declare that the Defendants' actions in preventing Plaintiff from attending the public hearings of the Hospital Board, violates Plaintiff's First Amendment right to petition government for the redress of his grievances.").)

[3] Individuals Thomas Garthwaite and Kimberly Fulcher were named as defendants in the Complaint. (*See* Doc. 1.) They jointly moved to dismiss the claims against them. (Doc. 30.) Plaintiff subsequently voluntarily dismissed his claims against those individual defendants. (Doc. 33.) Accordingly, their motion is due to be denied as moot.

**I.      Claim-Splitting**

Defendants assert that this action should be dismissed because Plaintiff has impermissibly split causes of action. (Doc. 31, pp. 7–10.) Federal courts recognize Florida's rule against splitting causes of action,[4] *see Robbins v. Gen. Motors de Mexico, S. DE R.L. DE CV.*, 816 F. Supp. 2d 1261, 1263–64 (M.D. Fla. 2011), which "flows from the doctrine of res judicata" and "makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action," *Dep't of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc.*, 570 So. 2d 892, 901 (Fla. 1990). For the prohibition to apply, the defendants in the cases must be the same "or at least in privity with each other." *Robbins*, 816 F. Supp. 2d at 1264 (applying the same standard as that for the federal doctrine of claim-splitting); *see also Alvarez v. Nestor Salesco, Inc.*, 695 So. 2d 941, 942 (Fla. 4th DCA 1997) (stating that Florida's rule against splitting causes of action "does not apply where the claims involve different defendants").

Prior to filing this action, Plaintiff filed suit in Florida state court against Halifax Staffing for an alleged violation of Florida's Whistleblower Statute and against individuals Thomas Garthwaite and Kim Fulcher for alleged violations of Plaintiffs First Amendment rights (the "State Court Action"). (*See* Doc. 37-1, pp. 6–16.) The State Court Action is still

---

[4] The *federal* doctrine of claim-splitting permits a federal district court "to stay or dismiss a suit that is duplicative of another case *then pending in federal court.*" *Robbins*, 816 F. Supp. 2d at 1263; *Zephyr Aviation III, LLC, v. Keytech Ltd.*, Case No. 8:07-cv-227-T-27TGW, 2008 WL 759095, at * 1 n.4 (M.D. Fla. Mar. 20, 2008). Under this doctrine, federal courts may dismiss a later-file suit if it "1) involves the same parties or their privies; and 2) arises out of the same transaction or series of transactions as the first [federal] suit." *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (citing Zephyr Aviation III, 2008 WL 759095, at *1 n.4). The federal rule against claim-splitting is not applicable here because the previously filed action is pending in state, not federal, court.

pending. Plaintiff subsequently brought this action against Halifax Staffing and Halifax Health for alleged violations of U.S. and Florida constitutional rights and Florida's Sunshine Law (the "Instant Action"). (*See* Doc. 1.) While the Florida Whistleblower claim in the State Court Action is supported by its own set of factual allegations regarding alleged retaliation for Plaintiff's whistleblowing activities (*see* Doc. 37-1, pp. 7–16), the First Amendment claim in the State Court Action and the First Amendment and Sunshine Law claims in the Instant Action all arise from the same set of factual allegations regarding Plaintiff's alleged removal from the Board meeting and prohibition from attending future meetings (*compare* Doc. 1, ¶¶ 29–101, *with* Doc. 37-1, pp. 6–16, ¶¶ 60–131). Thus, the State Court Action and the Instant Action inarguably involve claims that pertain to the same circumstances.

The Court therefore turns to the second factor in determining whether Plaintiff has engaged in claim-splitting: whether the defendants in the two actions are identical or in privity with one another. *Robbins*, 816 F. Supp. 2d at 1264. Plaintiff concedes that the he has split his causes of action in regards to Defendant Halifax Staffing and that the "claims against that entity [in the Instant Action] are due to be dismissed without prejudice so that they may be heard in the original forum, the state court." (Doc. 55, p. 2.) Thus, the motion to dismiss is due to be granted with respect to Defendant Halifax Staffing, but Defendant Halifax Health remains.

Halifax Health has not persuaded the Court that it is in privity with the State Court Action defendants. *See Zephyr Aviation III*, 2008 WL 759095, at *7 (explaining that vague allegations that two defendants may be affiliated in some way are "hardly [] adequate to demonstrate privity"). Indeed, Plaintiff's response to the Court's Order to Show Cause is

more persuasive: Halifax Health is a special taxing district that operates Halifax Hospital, whereas Halifax Staffing "is a separately incorporated entity which provides employment . . . services for Halifax Health on a contract basis," and therefore they are not in privity. (Doc. 55, pp. 3–5); *see also Bowman v. Coddington*, 517 F. App'x 683, 684 (11th Cir. 2013) (holding that Florida's rule against splitting causes of action precluded a later-filed suit even though the named defendants were different because the plaintiff himself urged that they were the same entity and because "successor corporate liability" could apply); *Greenstein v. Greenbrook, Ltd.*, 443 So. 2d 296, 297 (Fla. 3d DCA 1983) (finding that the rule against splitting causes of action did not apply to defendants that were not joined in the first case). This is similar to the factual scenario in *Robbins*:

> The defendants in the state court case and the case before this Court are not identical, and [the defendant in the federal action] has made no argument that it is in privity with any of the state court defendants. Moreover, there is nothing to suggest that the Plaintiff has attempted to split her damages claims into separate causes of action. Rather, the damages claims in both the state court case and this case are identical. They are simply asserted against different defendants. As such, the Court finds that claim splitting does not bar the Plaintiff's case.

816 F. Supp. 2d at 1264–65 (citation omitted). The Court, finding *Robbins* to be instructive, concludes that the claim splitting does not bar Plaintiff's case against Halifax Health.[5] *Id.* at 1265.

---

[5] The Court recognizes, as Judge Hodges did in *Robbins*, that when two cases involving the same operative facts proceed to judgment in different forums, there is a "real possibility of conflicting results" and that this Order may indeed result in a "race to judgment," *see Robbins*, 816 F. Supp. 2d at 1265, but that is a natural consequence when a Plaintiff chooses to bring similar claims against different defendants in different forums. Because the defendants are neither identical nor adequately proven to be in privity with one another, the rule that prohibits splitting causes of action is not applicable and dismissal of this later-filed action is not warranted. *Id.*

7

The Court now turns to the motion to dismiss pursuant to Rule 12(b)(6).

## II.     Failure to State a Claim

Defendant[6] moves to dismiss under Federal Rule of Civil 12(b)(6), arguing that Plaintiff failed to state a plausible § 1983 claim, on the following grounds: (1) Plaintiff's First Amendment rights were not implicated (Doc. 31, pp. 5–7); and (2) Plaintiff did not satisfy the state action requirement of § 1983 (*id.* at 10–12).

When a complaint does not comply with minimum pleading requirements or otherwise "fails to state a claim to relief that is plausible on its face," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009). When considering a Rule 12(b)(6) motion, courts must limit their consideration to the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *e.g.*, *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). Courts also must accept all well-pled factual allegations—but not legal conclusions—in the complaint as true. *Tellabs*, 551 U.S. at 323; *e.g.*, *Iqbal*, 556 U.S. at 672 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). After disregarding allegations that "are not entitled to the assumption of truth," the court must determine whether the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). If so, then it is plausible. *Id.*

---

[6] The motions to dismiss (Docs. 31, 32) are on behalf of Halifax Health and Halifax Staffing, but as previously explained, the claims against Halifax Staffing are due to be dismissed pursuant to Plaintiff's concession (Doc. 55, p. 2). Going forward, "Defendant" will refer to the only remaining Defendant in the Instant Action, Halifax Health.

Section 1983 of Title 42 of the United States Code "affords a 'civil remedy' for deprivations of federally protected rights caused by persons acting under color of state law." *Parrat v. Taylor*, 451 U.S. 537, 535 (1981), *abrogated on other grounds by Daniels v. Williams*, 474 U.S. 327, 330 (1986).[7] To prevail on a § 1983 claim, Plaintiff must prove that a person acting under color of state law committed conduct that "deprived [him] of rights, privilege, or immunities secured by the Constitution or laws of the United States." *Parrat*, 451 U.S. at 535; *Rodriguez v. City of Miami, Fla.*, 907 F. Supp. 2d 1327,1331 (S.D. Fla. 2012) (explaining that, to state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived her of a protected right).

Plaintiff has alleged that Defendant: (1) acted under color of state law (Doc. 1, ¶ 78); and (2) violated his First Amendment speech rights (*id.* ¶¶ 93–101) and his right to attend public meetings and "petition the government for the redress of his grievances" (*id.* ¶¶ 102–111). "This Court has held that inclusion of these elements in the complaint in an action under 42 U.S.C. § 1983 is sufficient to withstand a motion to dismiss." *Morris*, 825 F. Supp. at 297; *see also Little v. City of N. Miami*, 805 F.2d 962, 987 (11th Cir. 1986) (explaining that a § 1983 claim premised on a violation of First Amendment rights only requires "an action '*under color of state law*' which inhibits the exercise of protected rights" (emphasis in original)). Specifically, Plaintiff alleges that Defendant is a "special taxing district . . . chartered by the State of Florida Legislature and [] governed by a Board of Commissioners appointed by the Governor of Florida and that it was acting under the color of state law when it "caused, permitted or ratified Plaintiff's removal from the public

---

[7] In *Daniels*, the Supreme Court of the United States clarified that "merely negligent conduct may not be enough to state a [§ 1983] claim" depending on the underlying constitutional right that was allegedly violated. 474 U.S. at 330.

9

meeting and when they issued the trespass notice to Plaintiff." (*Id.* ¶ 78.) Viewed in the light most favorable to Plaintiff, the Complaint asserts that Defendant, acting under the color of Florida law, ratified the decision to prevent Plaintiff from attending or speaking at any of its public Board meetings in retaliation for his previous whistleblowing activities, thereby subjecting him to violations of his First Amendment rights.

Insofar as Defendant argues that Plaintiff's First Amendment speech rights were not implicated because he planned to speak on a matter of private concern and because he did not actually speak at the meeting (Doc. 31, pp. 5–7), the Court disagrees. Expressive *conduct* is also subject to First Amendment protections. *Texas v. Johnson*, 491 U.S. 397, 403 (1989). Because its board meetings were opened to the public and permitted public participation, Defendant designated its meeting a public forum. *See Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989); (Doc. 1, ¶¶ 29–31). At this stage of the proceedings, the Court deems Plaintiff's attendance at the public meeting expressive conduct. While Defendant could apply content-neutral time, place, and manner restrictions to its meetings that are "narrowly tailored to effectuate a compelling governmental interest," *see Jones*, 888 F.2d at 1331, it could not wholly prevent Plaintiff from attending and potentially exercising his right to speak on a matter of public concern. Plaintiff has accordingly alleged a plausible § 1983 claim, and Defendant's Rule 12(b)(6) motion is due to be denied.

### III. Sham Pleading

Finally, Defendant moves for dismissal of the action pursuant to the Court's inherent authority on the grounds that the Complaint is a sham pleading and that Plaintiff's allegations were made in bad faith. (Doc. 32.) This motion is not well-taken.

Courts have the inherent authority to sanction litigants for bad faith conduct, such as filing frivolous pleadings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–48 (1991). However," "outright dismissal of a lawsuit," while within the Court's discretion, "is a particularly severe sanction." *Id.* at 45. Defendant's assertion that Plaintiff's Complaint should be dismissed as frivolous because his previous testimony[8] proves he is unable to state a claim (Doc. 32, pp. 7–11) is unpersuasive. The Court has already determined that Plaintiff alleged a claim to relief sufficient to survive a motion to dismiss. The truth of those allegations remains to be determined, but, at this stage, the Court cannot deem them sham or frivolous assertions made in bad faith warranting sanctions, particularly a sanction as severe as "outright dismissal."[9] *See Chambers*, 501 U.S. at 46–48 (discussing multiple forms of sanctions less severe than dismissal).

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss Complaint (Doc. 31) is **GRANTED IN PART and DENIED IN PART**.

    a. The Motion is **GRANTED** with respect to Defendant Halifax Staffing, Inc. All claims against Halifax Staffing, Inc. are **DISMISSED WITHOUT PREJUDICE**.

    b. The Motion is **DENIED** with respect to Defendant Halifax Health.

2. Defendants' Motion for Involuntary Dismissal of Complaint as a Sham Pleading (Doc. 32) is **DENIED**.

---

[8] Defendant relies on Plaintiff's deposition testimony from the State Court Action that he did not intend upon speaking at the Board meeting. (Doc. 32, p. 2; Doc. 32-2.)

[9] The Court rejects all other arguments not specifically addressed herein.

3. Defendants Tom Garthwaite's and Kimberly Fulcher's Dispositive Motion to Dismiss Complaint and Incorporated Memorandum of Law (Doc. 30) is **DENIED AS MOOT**.

4. The Clerk is **DIRECTED** to **TERMINATE** individual Defendants Tom Garthwaite and Kimberly Fulcher from the docket caption pursuant to the Notice of Voluntary Dismissal (Doc. 33).

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 19, 2015.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record